IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DONALD R. REYNOLDS,

        **Plaintiff,**

v.                     //   CIVIL ACTION NO. 1:16CV77
                                   (Judge Keeley)

ASCENT RESOURCES — MARCELLUS, LLC,


        **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 30; 31]**

---

On March 28, 2016, the plaintiff, Donald R. Reynolds ("Reynolds"), filed this action in the Circuit Court of Harrison County, West Virginia. On May 2, 2016, the defendant, Ascent Resources - Marcellus, LLC ("Ascent"), removed the case to this Court based on diversity (Dkt. No. 1). The parties have filed competing motions for summary judgment that are fully briefed and ripe for review. For the following reasons, the Court **DENIES** the motions (Dkt. Nos. 30; 31).

### I. BACKGROUND

**A.**   **Factual Background**

Many of the facts in this case are not in dispute. Reynolds resides in Jane Lew, Harrison County, West Virginia (Dkt. No. 30-4 at 1). In April 2015, W. Travis McBain ("McBain"), an Ascent representative, contacted Reynolds regarding Ascent's interest in

leasing certain of his oil and gas interests (Dkt. No. 12 at 1; 30-4 at 1). Ultimately, Reynolds agreed to lease Ascent his interest in oil and gas underlying a 561.61-acre tract known as the Milton Underwood No. 2 Farm, McClellan District, Doddridge County, West Virginia ("Milton tract") (Dkt. No. 30-4 at 1).[1]

Ascent prepared and provided a number of documents, dated June 8, 2015, including: 1) the Paid-Up Oil and Gas Lease ("Lease"), 2) the Memorandum of Oil and Gas Lease, and 3) the Order of Payment (collectively, the "Lease documents") (Dkt. No. 21 at 2). The Paid-Up Oil and Gas Lease provides in relevant part as follows:

> LEASING CLAUSE. Lessor hereby grants, leases, and lets exclusively to Lessee all the oil and gas . . . and their liquid or gaseous constituents, whether hydrocarbon or non-hydrocarbon, underlying the land herein leased . . . .
>
>              . . . .
>
> (H) TITLE: If Lessee receives evidence that Lessor does not have title to all or any part of the rights herein leased, Lessee may immediately withhold payments that would be otherwise due and payable hereunder to Lessor until the adverse claim is fully resolved.[2] Lessor

---

[1] The parties dispute whether Reynolds or McBain first suggested that Ascent lease Reynolds's interest in the Milton tract (Dkt. Nos. 15 at 1; 21 at 1-2), but this fact is not material to the Court's ruling.

[2] Reynolds argues that this clause is "at a minimum, ambiguous," and should be interpreted to mean that Ascent can withhold payment only if he does not own the Subject Interest (Dkt.

> represents and warrants that there is no existing oil and
> gas lease which is presently in effect covering the
> Leasehold.
>
> TITLE AND INTERESTS. Lessor hereby warrants generally and
> agrees to defend title to the Leasehold and covenants
> that Lessee shall have quiet enjoyment hereunder and
> shall have benefit of the doctrine of after acquired
> title.
>
> . . . .
>
> ENTIRE CONTRACT. The entire agreement between Lessor and
> Lessee is embodied herein and in the associated Order of
> Payment (if any).

(Dkt. No. 32-1 at 1-5). The associated Order of Payment includes

the following agreements:

> Ascent Resources - Marcellus, LLC will tender payment to
> the Lessor identified in the Paid Up Lease ("Lease") as
> indicated herein by check within **45** days of its receipt
> of the original of this Order of Payment and the executed
> Lease. Payment is conditioned upon title to the property
> interests leased being confirmed satisfactorily to Ascent
> Resources - Marcellus, LLC, in its sole discretion. . . .
>
> If Lessor owns more or less than the net interest defined
> herein, Ascent Resources - Marcellus, LLC may, without
> immediate notice to Lessor, increase or reduce the
> consideration payable hereunder proportionate to the
> actual interest owned by Lessor.

---

No. 34 at 7). This interpretation, however, ignores the fact that
the Lease purports to include an exclusive lease of the oil and gas
underlying the Subject Interest (Dkt. No. 32-1 at 1). If an
existing lease encumbered the Subject Interest, then Reynolds did
not have the title necessary to convey as "part of the rights . .
. leased" the exclusive right to the oil and gas underlying the
Subject Interest. See St. Luke's United Methodist Church v. CNG
Development Co., 663 S.E.2d 639, 641 n.6 (W. Va. 2008).

. . . If the Lease has not been surrendered or payment
made by the specified due date, then Lessor shall notify
Lessee in writing and Lessee shall have 30 days from
receipt of such written notice to make payment or
surrender the lease without any liability.

. . . Lessor agrees that payment made hereunder is final
and will not seek to amend or modify the payment, or seek
additional consideration based upon any differing terms
which Ascent Resources - Marcellus, LLC has or will
negotiate with any other lessor/oil and gas owner.

Id. at 13.

In total, the Lease encompassed Reynolds's interest in eight

parcels, including his interest in a certain 90.83-acre tract ("the

Subject Interest").[3] Id. at 12. Pursuant to the terms in the Order

of Payment, Ascent agreed to pay Reynolds a signing bonus of $4,100

per net acre, totaling $367,775.237 (Dkt. Nos 30-5; 32-1 at 13).

Reynolds executed the Lease documents on October 9, 2015, and

returned them to Ascent (Dkt. Nos. 30-2 at 2; 30-4 at 2).

Shortly thereafter, in late October 2015, McBain called

Reynolds to inform him that Ascent had decided not to fund the

lease for the Subject Interest because the West Virginia Department

of Environmental Protection ("DEP") "website indicated that a

producing well was located on the parcel and for that reason the

---

[3] The Subject Interest is identified as Milton Underwood Farm,
McClellan District, Doddridge County, West Virginia, Assessor
District and Tax Map and Parcel Number 05-11-024.

parcel was subject to an existing oil and gas lease" (Dkt. No. 15-4). On October 28, 2015, Ascent issued a check to Reynolds in the amount of $267,956.34, which reflected that payment had been withheld for the Subject Interest (Dkt. Nos. 30-5; 32-14).[4] Reynolds received the check on October 30, 2015, and signed the lease obligation deposit receipt on November 2, 2015 (Dkt. Nos. 30-4 at 2; 32-13). He then cashed and deposited the check (Dkt. No. 32-4 at 5).

Then, on November 9, 2015, Reynolds sent a letter to Ascent demanding that it execute and record a partial release of the Lease to reflect the fact that it had "failed to make payment" for the Subject Interest (Dkt. Nos. 30-4 at 4). Prior to receiving this demand letter on November 16, 2015, id. at 5, Ascent had recorded the Memorandum of Oil and Gas Lease ("Memorandum") in the Office of the Clerk of the Commission of Doddridge County, West Virginia, on November 12, 2016 (Dkt. Nos. 30-2 at 4; 32-12 at 4). The Memorandum was "made and filed for the purpose of giving third parties notice of the existence of the Lease," but was "not intended as an amendment of the terms and conditions of the Lease" (Dkt. 32-12 at

---

[4] Reynolds contends that he did not know Ascent had decided not to lease the Subject Interest until he received this check (Dkt. No. 34-1 at 4).

**MEMORANDUM OPINION AND ORDER DENYING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 30; 31]**

1). As it is included in the Lease, the Memorandum includes the Subject Interest. Id. at 4.

When Ascent did not respond to his first demand, Reynolds, by counsel, sent another letter to Ascent on February 4, 2016 (Dkt. Nos. 30-4 at 2; 30-6). Rather than again request a release, this second letter demanded that, because the recorded Memorandum reflected that Ascent had a leasehold in the Subject Interest, Ascent tender within 21 days "the agreed upon bonus compensation remaining to be paid in the amount of $99,818.93" (Dkt. No. 30-6 at 1). Thereafter, on March 3, 2016, Ascent recorded a Partial Release of Oil and Gas Lease, which canceled the Lease in regard to the Subject Interest (Dkt. No. 4-1). Between receiving the $267,956.34 check and the release of the Subject Interest, Reynolds did not take any steps to cure title or hire anyone to investigate the title and leasehold (Dkt. No. 34-1 at 4). Further, he has not "taken any steps to lease [the Subject Interest] to anyone else" (Dkt. No. 32-4 at 6).

## B.  Procedural Background

After Reynolds filed this action in the Circuit Court of Harrison County, West Virginia, claiming that Ascent had breached the parties' contract (Dkt. No. 1-1), Ascent removed the case to this Court and filed a motion to dismiss the complaint for failure

**MEMORANDUM OPINION AND ORDER DENYING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 30; 31]**

to state a claim (Dkt. Nos. 1; 3). Reynolds responded to the motion on June 1, 2016, and also filed a request for judgment on the pleadings (Dkt. No. 6).

At a scheduling conference on July 5, 2016, the Court held Ascent's motion to dismiss in abeyance and ordered Reynolds to file an amended complaint by July 15, 2016 (Dkt. No. 12). After Reynolds filed his amended complaint (Dkt. No. 15), the parties filed supplemental briefs on Ascent's pending motion to dismiss (Dkt. Nos. 16; 17). The Court denied the motion on September 30, 2016 (Dkt. No. 19), following which the parties engaged in discovery, and then filed cross motions for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or

determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. APPLICABLE LAW

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits." Volvo Const. Equip. N. Am. v. CLM Equip. Co., Inc., 386 F.3d 581, 599-600 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938)). In West Virginia, "[a] claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages." Sneberger v.

Morrison, 776 S.E.2d 156, 171 (W. Va. 2015) (citing Syl. Pt. 1,

State ex rel. Thornhill Group, Inc. v. King, 759 S.E.2d 795 (W. Va.

2014)). In addition, the plaintiff must "show that he has complied

with the contract himself, . . . and, if the evidence shows that he

has not complied with the terms of the contract, and has not been

prevented or relieved therefrom as aforesaid, he will be denied a

recovery from the breach of same." Charleston Nat'l Bank v. Sims,

70 S.E.2d 809, 813 (W. Va. 1952) (quoting Jones v. Kessler, 126

S.E. 344 (W. Va. 1925)).

Therefore, in order to prevail on his motion for summary

judgment, Reynolds must establish the following four elements:

"[T]he existence of a valid, enforceable contract; that [he] has

performed under the contract; that [Ascent] has breached or

violated its duties or obligations under the contract; and that

[Reynolds] has been injured as a result." See Exec. Risk Indem.,

Inc. v. Charleston Area Med. Ctr., Inc., 681 F. Supp. 2d 694, 714

(S.D.W. Va. 2009) (citing 23 Williston on Contracts § 63:1 (Richard

A. Lord, ed., 4th ed. West 2009)). In order for it to prevail on

its motion for summary judgment, Ascent must establish the inverse

of at least one of these four elements.

When the existence of a written contract is not in dispute,

"[i]t is the province of the Court, and not of the jury, to

**MEMORANDUM OPINION AND ORDER DENYING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 30; 31]**

interpret" the contract. Syl. Pt. 1, <u>Toppings v. Rainbow Homes, Inc.</u>, 490 S.E.2d 817 (W. Va. 1997). "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 2, <u>id.</u> "A contract is ambiguous when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction." <u>Williams v. Precision Coil, Inc.</u>, 459 S.E.2d 329, 342 n.23 (W. Va. 1995). "The general rule as to oil and gas leases is that such contracts will generally be liberally construed in favor of the lessor, and strictly as against the lessee." Syl. Pt. 5, <u>Energy Dev. Corp. v. Moss</u>, 591 S.E.2d 135 (W. Va. 2003).

## IV. DISCUSSION

The parties do not dispute that the Lease documents comprise a valid, enforceable contract (Dkt. Nos. 30 at 5; 32 at 11).[5] After considering the parties' arguments and evidentiary submissions, however, the Court concludes that material facts regarding Reynolds's performance and Ascent's alleged breach of contract are

---

[5] As the Lease provides, the parties' agreement includes both the Lease and the Order of Payment (Dkt. No. 32-1 at 5).

in dispute, and therefore **DENIES** the parties' motions for summary judgment (Dkt. Nos. 30; 31).

## A. Reynolds's Performance

The parties dispute whether Reynolds complied with his contractual obligations, which are unambiguously outlined in the Lease. Reynolds agreed to an exclusive lease of the Subject Interest: "Lessor hereby grants, leases, and lets <u>exclusively</u> to Lessee <u>all</u> the oil and gas . . . underlying the land . . ." (Dkt. No. 32-1 at 1) (emphasis added). He expressly "warrant[ed] that there [was] no existing oil and gas lease . . . in effect covering the Leasehold," and he also provided covenants of general warranty and quiet enjoyment. <u>Id.</u> at 3-4.

The plain meaning of the term "exclusive" indicates that the holder of an exclusive lease must have the right to exclude others from the leasehold estate. <u>See</u> <u>Webster's Third New International Dictionary</u> 793 (unabridged ed. 2002); *Exclusive*, <u>Black's Law Dictionary</u> (10th ed. 2014) ("Limited to a particular person, group, entity, or thing <exclusive right>."). An owner has "insufficient title and right" to lease his oil and gas if there is a "valid and subsisting" lease in effect. <u>See</u> <u>Shearer v. Allegheny Land & Mineral Co.</u>, 165 S.E.2d 369, 373, 375 (W. Va. 1968). Such a secondary lessee cannot drill while a valid lease is still in

effect, but must first defeat the original lease. St. Luke's United Methodist Church v. CNG Development Co., 663 S.E.2d 639, 641 n.6 (W. Va. 2008).

"A covenant of general warranty of title is merely a covenant to warrant and defend the title against the claims of all persons whatsoever. It is not broken until there is an eviction of the vendee from the property, or equivalent disturbance, by title paramount." Booker T. Washington Const. & Design Co. v. Huntington Urban Renewal Authority, 383 S.E.2d 41, 44 (W. Va. 1989) (quoting McKinley Land Co. v. Maynor, 85 S.E. 79, 80 (W. Va. 1915)); see also W. Va. Code § 36-4-2. The general warranty of title is thus a future covenant, and it is only breached at the time of conveyance if "there is paramount title in one who is in possession of the property." "In such a case, the possession by a person with paramount title operates as an eviction eo instanti," which immediately necessitates defending one's title. Id. n.8 (citing Rex v. Creel, 22 W. Va. 373, 374-75 (1883)). "[T]he covenant of warranty is considered the equivalent of the covenant for quiet enjoyment." Id. at 43 n.7; accord Bitting v. Gray, 897 A.2d 25, 35 (R.I. 2006).[6]

---

[6] In West Virginia, the covenant of quiet enjoyment also exists by both statute and the common law. W. Va. Code § 36-4-14;

### MEMORANDUM OPINION AND ORDER DENYING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 30; 31]

While Ascent has submitted enough evidence to preclude a genuine dispute that the Subject Interest is host to a producing oil and gas well, neither party has established whether the production is by virtue of paramount title. Because this question of fact is material to the parties' respective obligations under the Lease, neither is entitled to judgment as a matter of law regarding Reynolds's performance under the contract.

### 1.  Reynolds's Argument

Reynolds argues that he fulfilled his obligation to deliver exclusive title and that nothing precluded Ascent "from developing and lucratively monetizing this leasehold estate" (Dkt. No. 36 at 3). He further argues that he "performed all obligations required when he executed the lease documents as presented to him by the Defendant Ascent and returned them" (Dkt. No. 30 at 8). Reynolds did not submit any evidence in support of these arguments.

In addition, Reynolds's own statements under oath during his deposition on December 20, 2016, call into question whether he has a good faith basis to argue that he provided exclusive title. When asked whether he had "ever leased a tract . . . that already had an existing leasehold on it," Reynolds responded that "[a]pparently

---

Syl. Pt. 1, <u>Headley v. Hoopengarner</u>, 55 S.E. 744 (W. Va. 1906); Syl. Pt. 2, <u>Knotts v. McGregor</u>, 35 S.E. 899 (W. Va. 1900).

it's happened on this tract" (Dkt. No. 32-4 at 3-4). Tellingly, Reynolds also testified that, at the time he acquired the Subject Interest, he did not investigate its leasehold status. Id. at 1-2. Moreover, Reynolds made no attempt to cure title or investigate the state of the leasehold prior to Ascent's release of the Subject Interest on March 3, 2016 (Dkt. No. 34-1 at 4).

### 2. Ascent's Arguments

Although the undisputed evidence establishes that a producing well was located on the Subject Interest at the time that Reynolds executed the Lease documents, Ascent has not established that Reynolds breached the parties' agreement as a result.

As McBain outlined in his March 2016 letter to Reynolds, "the DEP website indicated that a producing well was located on the parcel" (Dkt. No. 15-4). According to the DEP website, since at least 2011, Commonwealth Energy, Inc. ("Commonwealth"), has been producing 5,000 cubic feet of gas per month from a functioning well located by Ascent's expert on the Subject Interest (Dkt. No. 32-2 at 1).[7] Indeed, since 1988, Reynolds has leased the Subject

---

[7] Reynolds produced no evidence to rebut or dispute these facts. In fact, he asserted that he "does not know if there is a producing shallow well upon the oil and gas estate . . . which he co-owns" (Dkt. No. 34 at 1). He only attempted to discredit Ascent's expert by suggesting that he is not qualified to survey the Subject Interest and locate the well at issue upon it (Dkt. No.

Interest no fewer than eight times (Dkt. Nos. 32-5; 32-6; 32-7; 32-8; 32-9; 32-10; 32-11; 32-12), the most recent lease being to Jay-Bee Production Company with an effective date of June 21, 2010, and a five-year primary term that expired on June 21, 2015 (Dkt. No. 32-11 at 1).

As a result, Ascent argues that

> [t]he undisputed fact of production, coupled with the numerous leases of record that Plaintiff has executed for the Subject Property, is irrefutable evidence that Plaintiff's leasehold title to the Subject Property is neither exclusive nor quiet. Rather, Plaintiff's leasehold title is clouded because a third-party operator is producing the Subject Property pursuant to a paramount leasehold claim and Plaintiff, therefore, is unable to convey exclusive and quiet title.

(Dkt. No. 32 at 16).

Essentially, Ascent is asking the Court to assume, without any proof, that Commonwealth is producing oil and gas from the Subject Interest by virtue of one of the prior leases of record, thus giving it paramount title. Consistent with this argument, Ascent asserts that "any evidence of paramount title amounts to a failure to deliver good title under a covenant of general warranty" (Dkt. No. 32 at 13 (citing Syl. Pt. 1, Ilsey, 26 S.E. 551)).

_____

34 at 8). The expert's affidavit and report clearly indicate that a survey crew was present to conduct the survey (Dkt. No. 32-3 at 3).

As discussed earlier, however, the third party possessor must actually have paramount title at the time of the conveyance in order to constitute a breach of the covenant of general warranty. Booker T. Washington, 383 S.E.2d at 44-45. None of the eight leases submitted by Ascent reflects that Commonwealth, the reported operator, is a rightful lessee or assignee of the right to produce oil and gas from the Subject Interest. Simply put, the mere existence of prior leases without more does not lead to the inevitable conclusion that Commonwealth's possession and production is by virtue of paramount title. The Court will not assume paramount title without evidence.[8] Therefore, Ascent has not established that Reynolds failed to perform his obligations under the Lease.

**B.    Ascent's Breach**

The parties dispute whether Ascent breached the contract when it failed to tender bonus compensation for the Subject Interest. Although Reynolds is incorrect that the Subject Interest's state of

---

[8] The Court acknowledges that, in order to receive a permit to operate the well, Commonwealth must have provided the lease or contract that gives it the right to extract from the Subject Interest. See W. Va. Code § 22-6-8(c). This prerequisite alone, however, does not establish that Commonwealth, or whatever entity assigned it the right to operate on the Subject Interest, has paramount title.

title is "irrelevant" to the question of breach given his "timely" demand for a release, there is a genuine dispute concerning whether Ascent properly exercised its "right to reject problematic acreage" (Dkt. No. 32 at 18-20). Ascent's alternative argument, that Reynolds is estopped from seeking full payment because he accepted partial payment, likewise fails. <u>Id.</u> at 22-24.

### 1.   Compliance with the Contract

The Lease and Order of Payment plainly outline the circumstances in which payment may be withheld. The Lease provides that "[i]f Lessee receives evidence that Lessor does not have title to all or any part of the rights herein leased, Lessee may immediately withhold payments that would be otherwise due and payable hereunder to Lessor until the adverse claim is fully resolved" (Dkt. No. 32-1 at 3). The Order of Payment expressly states that "[p]ayment is conditioned upon title to the property interests leased being confirmed satisfactorily to Ascent Resources - Marcellus, LLC, in its sole discretion." <u>Id.</u> at 13. It also provides that "[i]f Lessor owns more or less than the net interest defined herein, Ascent Resources - Marcellus, LLC, may, without immediate notice to Lessor, increase or reduce the consideration payable hereunder proportionate to the actual interest owned by Lessor." <u>Id.</u> In order to determine whether title can be "confirmed

satisfactorily" or whether Reynolds owns "the net interest defined," it follows that Ascent must have investigated the title or ownership in a manner that provided a reasonable basis for its decision here to withhold payment.[9]

Reynolds's main argument regarding Ascent's alleged breach results from a misreading of the unambiguous language in the Order of Payment. He argues that, because Ascent did not execute a partial release of the Subject Interest within 30 days of his request, he is entitled to the bonus compensation that Ascent withheld (Dkt. No. 30 at 8-11). Ascent, however, argues that the plain language of the Order of Payment imposes no such obligation (Dkt. No. 35 at 10-12). Ascent is correct.

The Order of Payment provides that Ascent will "tender payment . . . within **45** days" of receiving the Lease documents (Dkt. No. 32-1 at 13). This payment, however, is conditioned on Ascent's

_____

[9] Indeed, discretionary power in a contract is subject to the ever-present duty of good faith and fair dealing. See Evans v. United Bank, Inc., 775 S.E.2d 500, 508-09 (W. Va. 2015); Stand Energy Corp. v. Columbia Gas Transmission Corp., 373 F. Supp. 2d 631, 644 (S.D.W. Va. 2005) (observing that West Virginia law "implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract"); see also Mezzanotte v. Freeland, 200 S.E.2d 410, 414 (N.C. Ct. App. 1973) ("Where a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based upon good faith and fair play.").

confirmation of title and may be lowered if Reynolds owns less than the net interest defined. Id. If the Lease is not surrendered or payment made within the 45 days, then Reynolds may demand that Ascent surrender the lease or make payment, in which case Ascent is given an additional 30 days to exercise either option without any liability. Id. Although the amount was lower than the amount Reynolds believed he was entitled to receive, Ascent tendered payment within 45 days of receiving the executed Lease documents, as required by the Order of Payment. Therefore, the remaining time constraints were not triggered, and Ascent was under no obligation to respond to Reynolds's demand for a partial release of the Subject Interest within 30 days.[10]

It does not necessarily follow from all of this that the evidence submitted by Ascent supports the conclusion as a matter of law that it complied with the contractual terms that permit it to tender a lower payment. Although the Order of Payment gives Ascent the right to reduce bonus compensation, the agreement provides that

---

[10] In a related argument, Reynolds takes issue with the fact that, although Ascent failed to pay him the bonus compensation for the Subject Interest, it nonetheless recorded the Memorandum that included it (Dkt. No. 36 at 3). The Lease documents do not preclude Ascent from doing so, as the parties' agreement includes the Subject Interest. Moreover, it is not apparent that Reynolds was damaged by this recordation, as he made no effort to lease the Subject Interest prior to Ascent's release (Dkt. No. 32-4 at 6).

it may do so if, in its sole discretion, it cannot satisfactorily confirm title to a particular interest, or if Reynolds "owns more or less than the net interest defined." Id. As has already been discussed, Ascent has not established that production on the Subject Interest is by virtue of paramount title. Thus, it has not established that Reynolds did not possess "the net interest defined." While Ascent at the time based its decision to lower payment on the DEP's production data, the parties dispute the validity of this data. Ascent suggests that it had "the contractual right to reject acreage as soon as it discover[ed] evidence indicating possession by a third party," such as numerous prior leases as well as evidence of production (Dkt. No. 32 at 19). Reynolds, on the other hand, argues without citing any authority that "there is no assurance that a report of production to the WV DEP for an old well is accurate" (Dkt. Nos. 34 at 8).[11]

Neither party has presented evidence regarding the availability or reasonableness of other methods by which Ascent could have further investigated the state of Reynolds's title after discovering that the DEP website reflected production on the Subject Interest. Based on the parties' briefing, the Court is

_____

[11] The DEP's data is compiled based on information reported to it by oil and gas operators (Dkt. No. 32-2 at 2).

**MEMORANDUM OPINION AND ORDER DENYING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 30; 31]**

unable to conclude as a matter of law that no reasonable juror could find by a preponderance of the evidence that Ascent abused its discretion to lower payment by failing to conduct sufficient investigation to confirm Reynolds's title to the Subject Interest.[12]

### 2.  Final Payment and Estoppel

Ascent also asserts two alternative but related arguments in an effort to establish that Reynolds has forfeited his right to argue it breached the parties' agreement by tendering too low a payment. These arguments are unconvincing.

First, Ascent argues that, because Reynolds agreed in the Order of Payment that "payment made hereunder is final" and that he would not "seek to amend or modify the payment," its decision to issue less than the full payment is effectively unassailable (Dkt. No. 32 at 22-24). If the Court were to accept the argument that this clause insulates Ascent from liability for any reduction in bonus compensation without regard for justification, it would render "meaningless" the other lease provisions that dictate when Ascent is actually entitled to reduce the payment. Chesapeake Appalachia, LLC v. Hickman, 781 S.E.2d 198, 213 (W. Va. 2015)

---

[12]The parties both also seek summary judgment on the question of damages (Dkt. Nos. 30 at 7; 32 at 20-22), but Reynolds's entitlement to damages is linked to whether Ascent properly rejected the Subject Interest and withheld bonus compensation.

(quoting Syl. Pt. 3, <u>Moore v. Johnson Serv. Co.</u>, 219 S.E.2d 315 (1975)). Rather, a "reasonable meaning . . . consistent with the whole contract" is that Reynolds agreed not to seek amendment or modification of the negotiated payment, which he also agreed Ascent had the right to lower under certain enumerated circumstances. <u>Id.</u>

Second, Ascent argues that the doctrine of quasi estoppel precludes Reynolds from seeking bonus compensation for the Subject Interest because he accepted the benefit of a lower payment by cashing the check for $267,956.34 (Dkt. No. 32 at 22-24).[13] The doctrine of quasi estoppel appears to have been mentioned by the Supreme Court of Appeals of West Virginia just once in a footnote, where it noted that the doctrine "is said to operate to 'preclude [] a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him.'" <u>Petition of Shiflett</u>, 490 S.E.2d 902, 909 n.26 (W. Va. 1997) (quoting 31 C.J.S. Estoppel and Waiver § 120, at 543). "The basis of this doctrine is 'in election, waiver, ratification, affirmance, acquiescence, or acceptance of benefits.'" <u>Id.</u> As discussed earlier, the Order of Payment contemplates only that Reynolds would not contest the

---

[13] To the extent Ascent also is asserting equitable estoppel, it has not offered any evidence that Reynolds made a misrepresentation upon which it detrimentally relied. <u>Jolynne Corp. v. Michels</u>, 446 S.E.2d 494, 504 (W. Va. 1994).

**MEMORANDUM OPINION AND ORDER DENYING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 30; 31]**

amount of a final payment that complied with the terms of the Lease documents. There is no evidence that, by accepting partial payment, Reynolds accepted a benefit contrary to full payment to which he otherwise contends he is entitled.[14]

## V. CONCLUSION

For the reasons discussed, the Court **DENIES** both Reynolds's and Ascent's motions for summary judgment (Dkt. Nos. 30; 31).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: May 11, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

---

[14] Ascent argues "that one who accepts payment pursuant to a mineral lease is estopped from challenging the terms therein" (Dkt. No. 32 at 23). The cases it cites in support of this assertion, however, demonstrate that such a rule applies to inconsistent actions not present in this case. Blair v. Dickenson, 54 S.E.2d 828, 848 (W. Va. 1949) (holding that a party who accepted coal mining royalty payments and permitted expenditures by the lessee was estopped from later repudiating the subject lease); Headley v. Hoopengarner, 55 S.E. 744, 745-46 (W. Va. 1906) (estopping plaintiff from claiming greater rights under his original lease than those he agreed to in a subsequent royalty division order).